IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WARREN FINNEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-023 |
| | ) | |
| | ) | |
| QUIONNA ROBINSON, Sergeant; | ) | |
| DENISHA GAUZE FOSTER; | ) | |
| KAREN THOMAS, Unit Manager; | ) | |
| JIMMY KELLOM, Lieutenant; | ) | |
| MS. JACOBS, Mental Health Counselor; | ) | |
| ARLENE LALISA HUNT, SART | ) | |
| Investigator; and LEWIS GIDDENS, | ) | |
| Corrections Officer, | ) | |
| | ) | |
| Defendants.[1] | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1] The Court **DIRECTS** the **CLERK** to add the first names of Defendants Kellom and Giddens to the docket in accordance with the caption of this document, which is consistent with the amended complaint. (See doc. no. 12.)

I.     **SCREENING THE AMENDED COMPLAINT**

A.     **BACKGROUND**

Plaintiff names the following Defendants:  (1) Quionna Robinson, TSP Sergeant; (2) Denisha Gauze Foster, TSP Unit Manager; (3) Karen Thomas, TSP Unit Manager; (4) Jimmy Kellom, TSP Lieutenant; (5) Ms. Jacobs, TSP Mental Health Counselor; (6) Arlene Lalisa Hunt, Sexual Assault Response Team (SART) Investigator; and (7) Lewis Gidden, TSP Correctional Officer.  (See doc. no. 12, pp. 2-5.)  Plaintiff sues all Defendants in their individual and official capacities.  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

In September of 2022, Defendants Kellom and Robinson told Plaintiff to pack his property to move from Unit E1 to Unit E2 because a Prison Rape Elimination Act (PREA) victim needed to be moved into Plaintiff's cell in Unit E1.  (Id. at 6.)  Plaintiff asked to speak to the warden when he realized that he was switching places with the PREA victim, and Defendant Kellom used pepper spray on Plaintiff.  (Id. at 7.)  Defendants Kellom and Robinson moved Plaintiff to Unit E2, but he was only provided a towel to wipe the pepper spray from his eyes and face; his request to see a nurse was denied.  (Id.)

Approximately three days after Plaintiff moved to Unit E2, Defendant Hunt, the SART Investigator, came to Plaintiff's cell to investigate the sexual assault allegations against his cellmate, and although Plaintiff asked why he was in the same cell as the person she was investigating, Defendant Hunt did not have Plaintiff moved to a different cell.  (Id.) When Plaintiff asked Defendant Thomas on September 13, 2022, why she had arranged for him to be put in the cell with the person being investigated for sexually assaulting another

2

prisoner, she told Plaintiff he was a "perfect match" for his cellmate and refused to move Plaintiff out of the cell.  (Id.)

On October 7, 2022, Plaintiff awoke to find his cellmate sexually assaulting him and threatening to kill him if he told anyone what had happened.  (Id.)  Plaintiff wrote a note about what had happened and handed it to Defendant Giddens, but he took the note and walked away without taking any action in accordance with prison procedures that Plaintiff does not describe.  (Id.)  When Defendant Foster came to Plaintiff's cell an hour later, he held up a sign that said "PREA," but she also walked away without taking any action in accordance with these non-descript prison procedures.  (Id.)  Defendant Foster returned at noon time to remove him from the cell and take him to the medical department, but after the examination, Plaintiff was placed on suicide watch in the segregation unit.  (Id. at 8.) Defendant Jacobs, as Plaintiff's mental health counselor, knew Plaintiff was not suicidal but left Plaintiff in segregation for ten days, where he was denied "a regulation tray, a bed, any clothes, or blanket or bed sheets and was forced to sleep on a concrete slap [sic]."  (Id.) Plaintiff wrote to the statewide PREA coordinator about his experience but never got a response.  (Id.)

Plaintiff acknowledges there is a grievance procedure at TSP, but he states he did not file a grievance about any of the issues raised in the amended complaint because "policy does not accept grievances about sex abuse."[2]  (Id. at 10-11.)  Rather, Plaintiff states he verbally reported the sexual assault to Defendants Giddens and Foster, as well as tried to tell a nurse, and he wrote to Defendant Jacobs and the statewide PREA coordinator.  (Id. at 11.) Plaintiff seeks monetary relief from all Defendants, along with a declaration Defendants

---

[2]Plaintiff further explains, "[P]olicy say that sexual abuse and/or sexual harassments are not grievable through the grievance procedure."  (Doc. no. 12, p. 12.)

violated his constitutional rights, and he seeks an injunction ordering Defendants "to follow policy and procedures."  (Id. at 6, 9.)

**B.    DISCUSSION**

**1.    Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting

Twombly, 550 U.S. at 555, 557).   In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"   Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.   Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).   However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint.   See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted

#### a.    Plaintiff No Longer Brings Any Claims Against Defendant Bellamy

As the Court previously explained, (doc. no. 8, p. 5), Plaintiff's amended complaint supersedes and replaces in its entirety the previous pleadings filed by Plaintiff.   See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).   Although Plaintiff originally named D. Bellamy as a Defendant, (see doc. no. 1, pp. 1, 2), the amended complaint no longer lists D. Bellamy as a Defendant and does not make any allegations associating this individual with a purported constitutional violation.[3]   (See generally doc. no. 12.)   Dismissal is therefore appropriate.   See Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); West v. Atkins,

---

[3]The Court recognizes Plaintiff has previously explained Defendant Bellamy is actually Defendant Foster, (doc. no. 6, p. 2), and the allegations against Defendant Foster are addressed herein.

487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law).  Therefore, Defendant Bellamy should be dismissed.

### b.    Plaintiff's Failure to Exhaust Administrative Remedies

### i.    The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies.  See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*).  The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).  Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### ii.    Administrative Grievance Procedure at TSP

The administrative grievance procedure is governed by the version of the Georgia Department of Corrections ("DOC") Standard Operating Procedure that resulted in the

promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[4]  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C).   The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, which includes (1) housing assignments unless there is an alleged threat to the prisoner's health or safety, and (2) sexual abuse and sexual harassment.  Id. §§ IV(B)(2)(g)&(i) and IV(C)(1)(e)(ii)(1).  "An Offender may file a grievance alleging retaliation or harassment, regardless of the form of the alleged retaliation or harassment."  Id. § IV(B)(3).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but

---

[4] DOC policies cited herein are publicly available on the DOC web site.  See www.dcor.state.ga.us; *follow* link for Policies & Procedures and then Facilities Division; *click on* link for desired PN (last visited May 4, 2023).

this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### iii.   No Exhaustion

In his amended complaint, Plaintiff acknowledges there is a grievance procedure at TSP and concedes that he did not file a grievance concerning the facts of his amended complaint.  (Doc. no. 12, pp. 10-11.)  According to Plaintiff, "policy does not accept grievances about sexual abuse," and "policy say that sexual abuse and/or sexual harassments are not grievable through the grievance procedure."  (Id. at 11, 12.)  However, Plaintiff is not suing Defendants as the persons who allegedly sexually abused or sexually harassed him.  As described herein, Plaintiff is suing Defendants for various issues separate and apart from the reported sexual abuse by Plaintiff's cellmate.

Defendants Kellom and Robinson allegedly used excessive force by administering pepper spray and refusing him adequate decontamination supplies and medical care when he questioned why he was changing cells.  (Id. at 6-7.)  Defendant Hunt, while conducting a SART investigation of Plaintiff's cellmate, and Defendant Thomas allegedly failed to protect Plaintiff by not removing Plaintiff from the cell where the assault occurred.  (Id. at 7.)  All of these allegations relate to separate events from the reported sexual abuse by Plaintiff's

cellmate.  The same can be said for Plaintiff's allegations that Defendants Giddens and Foster did not follow an undisclosed prison procedure after the sexual assault by Plaintiff's cellmate, as well as the allegations related to a conditions of confinement claim against Defendants Foster and Jacobs for placing him in a sparse suicide cell after the attack.  (Id. at 7-8.)  To the extent Plaintiff is complaining about any of these Defendants not changing his housing assignment that he believed to be a threat to his health or safety, harassing him for questioning them about moving from one cell to another or by improperly placing him on suicide watch in a cell with unconstitutional living conditions, such issues are grievable.  See PN 227.02 §§ IV(B)(2)(g)&(i), IV(B)(3) and IV(C)(1)(e)(ii)(1).

The face of Plaintiff's pleading makes clear he did not complete, indeed he never commenced, the two-step grievance process prior to filing his federal lawsuit.  Allowing Plaintiff to decide for himself to bypass the grievance process for any claim he believes has any potential connection to the reported sexual assault defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing any grievance related to his excessive force, harassment by staff, and conditions of confinement claims  - occurrences not involving allegations of sexual abuse or sexual harassment - would defeat the aims of PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159.   The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id.  Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261.  It is plain from the face of Plaintiff's amended complaint, indeed he concedes, that he failed to use the grievance process prior to commencing this case.  His allegations that a "policy" prohibits grievances about sexual abuse does not excuse his failure to grieve alleged actions of Defendants that did not involve sexual abuse.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the amended complaint fails to state a claim upon which relief can be granted.  See

Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

However, even if Plaintiff had exhausted his administrative remedies, his amended complaint fails to state a claim against any Defendant for multiple additional reasons. The Court addresses these additional reasons below.

### c.    Plaintiff Fails to State a Viable Failure-to-Protect Claim

Plaintiff fails to state a claim against Defendants Kellom, Robinson, Hunt, and Thomas – the only Defendants mentioned as interacting with Plaintiff prior to the reported assault - for failing to protect him from the sexual assault. The three elements of such a failure-to-protect claim include: (1) incarceration under conditions posing a substantial risk of harm; (2) the defendants had a sufficiently culpable state of mind; and (3) causation, e.g., demonstrating the constitutional violation caused an injury. Cox. v. Nobles, 15 F.4th 1350, 1357-58 (11th Cir. 2021). The second element, deliberate indifference, occurs when a prison official "knows of and disregards an excessive risk to innate health or safety." Id. at 1358. Thus, Plaintiff must allege a Defendant "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that a Defendant "dr[ew] the inference." Id. (citation omitted). Therefore, not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer v. Brennan, 511 U.S. 825, 833-34 (U.S. 1994)).

12

Here, Plaintiff has not alleged he provided any specific information to any Defendant about a threat from his cellmate who he states was under investigation for a prior assault. Plaintiff does not allege the investigation had been completed and concluded the cellmate had in fact sexually assaulted his prior cellmate.   Nor does Plaintiff allege any particular threat conveyed to him by his cellmate, which he in turn reported to any Defendant.   Rather, the amended complaint alleges Plaintiff asked Defendants Kellom, Robinson, Hunt, and Thomas why he had to switch places with an inmate who had made a report against the cellmate who eventually assaulted him, not that he reported a particularized threat.   (Doc. no. 12, p. 7.) General knowledge of the cellmate's violent history is not sufficient.  Cf. Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (*per curiam*) (requiring "much more than mere awareness" of an inmate's "generally problematic nature" to impose liability for failing to protect against attack).  In sum, as there is no allegation that any Defendant was aware of facts from which the inference could be drawn that Plaintiff's cellmate posed a substantial risk of serious harm and drew the inference, Plaintiff has not pled a valid failure-to-protect claim.  See Cox, 15 F.4th at 1358.

### d.    Plaintiff Fails to State a Claim Regarding Following Prison Regulations

Nor do Plaintiff's allegations that Defendants did not follow certain prison regulations regarding his sexual assault state a constitutional claim.   First, Plaintiff does not identify the provisions of any prison policy allegedly violated.   Second, even if he had identified a particular policy that was violated, an allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations are

"primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (*per curiam*) (finding district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Taylor v. White, Civ. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by*, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012).

### e.    Plaintiff Fails to State an Equal Protection Claim

Plaintiff states in conclusory fashion that the actions of Defendants violated his equal protection rights, (doc. no. 12, pp. 8-9), but he offers no details in support of any such claim. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); see also Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring plaintiff to demonstrate that challenged action was motivated by an intent to discriminate in order to establish equal protection violation).

Plaintiff does not meet these criteria.  Plaintiff does not allege that he is similarly situated with other prisoners who received more favorable treatment or that any alleged discriminatory treatment was based on some constitutionally protected interest.  Accordingly, Plaintiff fails to state a viable equal protection claim.

### f.       Plaintiff Fails to State a Due Process Claim

Plaintiff also states in conclusory fashion that Defendants violated his due process rights, presumably by changing his cell assignment before or after the reported sexual assault.  Plaintiff's assertion fails to state a claim upon which relief can be granted because, as explained below, he has not alleged a protected liberty interest was implicated by his cell assignment.

Section 1983 claims for denial of procedural due process require three elements:  "(1) deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (per curiam) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Sandin, 515 U.S. at 485 (citations omitted).  The Eleventh Circuit has ruled that with limited exceptions, the due process clause generally "does not directly protect an inmate from changes in the conditions of his confinement. . . . "  Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991).  Rather, there are two circumstances in which a prisoner can be deprived of a liberty interest such that due process is required:  (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court"; and (2) "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Kirby v. Siegelman, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing Sandin, 515 U.S. at

15

484).   As Plaintiff has not alleged his cell assignments extended the length of his incarceration, the Court turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."  Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)). Thus, the Court must consider whether an alleged deprivation of benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citations omitted), *adopted by* 2017 WL 343638 (M.D. Ga. Jan. 23, 2017).  To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'"  Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015).  Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief.  See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff has not provided any information about the typical conditions at TSP and has provided no details suggesting the conditions of his confinement in the cell where the assault occurred[5] or in the suicide watch cell imposed an atypical and significant hardship.  See

---

[5]Of course, a sexual assault is not to be considered typical of prison life.  However, as discussed above, no Defendant had particular notice that Plaintiff's cellmate intended to do him harm, so the act of moving Plaintiff from a cell in the E1 dormitory to a cell in the E2 dormitory does not present facts alleging an atypical and significant hardship.

Watkins v. Humphrey, Nos. 5:12-CV-97 and 5:12-CV-118, 2014 WL 6998102, at *1-2 (M.D. Ga. Dec. 10, 2014) (dismissing due process claim where the plaintiff failed to provide facts comparing his conditions of confinement differed from those in the general population). Plaintiff's cellmate was apparently *under investigation* for a prior sexual assault, but there is no allegation of known pattern of sexual abuse by the cellmate such that Plaintiff's transfer was a guarantee he would be assaulted.  As to the suicide watch cell, a ten-day stay in less than ideal conditions – particularly without any description as to conditions outside the segregated cell -  not does not amount to an atypical and significant hardship that worked a "major disruption to [Plaintiff's] environment" triggering due process protections.  See Sandin, 515 U.S. at 486-87; see also Fulwood v. Fed. Bureau of Prisons, 568 F. App'x 753, 757 (11th Cir. 2014) (*per curiam*) ("[M]oving [the prisoner] to a particular cell or packing [his] things did not amount to constitutional violations because an inmate has no liberty interest in a particular classification, prison assignment, or transfer . . . .").  As Plaintiff has not plausibly alleged atypical and significant hardship, he fails to establish he has a protected liberty interest.  Thus, he fails to state a due process claim.

### g.    **Official Capacity Monetary Damages**

Plaintiff states he is attempting to sue Defendants in their individual and official capacities.  However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendants for monetary relief fail as a matter of law.

## II.      CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of May, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA